**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| QUITA MORGAN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.:  5:25-cv-02372 |
| | : | |
| SUNOCO LOGISTICS PARTNERS GP LLC, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                            **March 12, 2026**

## I.    OVERVIEW

Plaintiff Quita Morgan ("Plaintiff" or "Morgan") brings claims for termination of employment contract on the basis of race under 42 U.S.C. § 1981, Title VII and in violation of the Pennsylvania Human Relations Act ("PHRA"), and termination of employment on the basis of gender, under Title VII and in violation of the PHRA, against Defendant Sunoco Logistics Partners GP LLC ("Defendant" or "Sunoco"), arising from the termination of her employment after she was found to have had a financial relationship with one of her subordinates, Collin Dorsey, and failed to report the potential conflict of interest to the company. Defendant has filed a Motion for Summary Judgment. Because Defendant articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment—her violation of Sunoco policy for having a financial relationship with one of her subordinates—and Plaintiff failed to establish pretext, the Court will grant summary judgment in favor of Defendant.

## II.    BACKGROUND

Defendant Sunoco is a subsidiary of Energy Transfer LP. Resp. *See* Def's Statement of Undisputed Material Facts ("Def.'s SUF"), ¶ 1 (ECF No. 23-2); Pl.'s Response to Def.'s Statement of Undisputed Facts (Resp. Def.'s SUF"), ¶ 1 (ECF No. 29-1). Energy Transfer is a publicly traded partnership that owns and operates a large and diversified portfolio of energy assets across the United States, including more than 125,000 miles of pipeline and related infrastructure. Def.'s SUF ¶¶ 2–4; Resp. Def.'s SUF ¶¶ 2–4.

Sunoco maintains an Equal Employment Opportunity ("EEO") Policy prohibiting discrimination based on race and sex and a Code of Business Conduct and Ethics requiring employees to report suspected violations and certify annual compliance. Def.'s SUF ¶¶ 8–10; Resp. Def.'s SUF ¶¶ 8–10. Plaintiff acknowledged these policies, completed annual certifications from 2019 through 2022 without reporting any conflicts of interest, and received mandatory training regarding the EEO Policy and Code of Conduct. Def.'s SUF ¶¶ 14–15; Resp. Def.'s SUF ¶¶ 14–15.

Plaintiff, a Hispanic woman, began working for Sunoco in 2012 as a Regional Engineer at the company's Fort Mifflin, Pennsylvania facility, where she reported to Senior Operations Manager Charlie Stewart. Plaintiff's Statement of Additional Material Facts ("PSAMF") ¶ 1 (ECF No. 29-1); Defendant's Response to Plaintiff's Additional Material Facts ("Resp. PSAMF") ¶ 1 (ECF No. 34); Def.'s SUF ¶ 16; Resp. Def.'s SUF ¶ 16. Over the course of her employment, Plaintiff advanced through several leadership roles, including Supervisor of Pipeline Operations and later Technical Manager following Sunoco's acquisition by Energy Transfer. Def.'s SUF ¶¶ 18–21; Resp. Def.'s SUF ¶¶ 18–21. In these roles, Plaintiff supervised multiple direct reports. Def.'s SUF ¶¶ 19, 22; Resp. Def.'s SUF ¶¶ 19, 22. Plaintiff later transferred to the Sinking Spring,

Pennsylvania location, where she reported to successive directors. Def.'s SUF ¶¶ 24–26; Resp. Def.'s SUF ¶¶ 24–26. In October 2022, Plaintiff was encouraged to apply for a Senior Manager position and interviewed for the role but was not selected. Def.'s SUF ¶¶ 27–28; Resp. Def.'s SUF ¶¶ 27–28.

During Plaintiff's employment, Plaintiff testified that a technician in the Sinking Spring office referred to Plaintiff as a "little brown girl." PSAMF ¶ 3; Resp. PSAMF ¶ 3. At the time of the events at issue, Sarah Ariza served as Senior Director of Human Resources and was responsible for ensuring compliance with Title VII and overseeing workplace investigations. PSAMF ¶¶ 32–35; Resp. PSAMF ¶¶ 32–35. Ms. Ariza acknowledged that referring to Plaintiff as a "little brown girl" could be interpreted as racially harassing and was aware that Plaintiff is not Caucasian. PSAMF ¶¶ 37–38; Resp. PSAMF ¶¶ 37–38. Ms. Ariza testified, however, that she did not recall whether any witnesses corroborated the allegation, did not know which individuals had been questioned about the incident, and confirmed that no independent investigation into the remark was conducted. PSAMF ¶¶ 39–41; Resp. PSAMF ¶¶ 39–41. Moreover, although testimony suggested that Plaintiff alleged advancement within the company required women to "take your pants off" for a boss, Ms. Ariza did not investigate whether male managers were engaging in sexual relationships with female subordinates. PSAMF ¶ 36; Resp. PSAMF ¶ 36.

From 2021 through early 2023, Plaintiff owned and resided at a property in Pine Grove, Pennsylvania. Def.'s SUF ¶¶ 29–30; Resp. Def.'s SUF ¶¶ 29–30. Beginning in December 2021, Mr. Dorsey lived at the property without a formal rental agreement. Def.'s SUF ¶¶ 34–35; Resp.

Def.'s SUF ¶¶ 34–35. Plaintiff testified that she rented a room to Mr. Dorsey to help pay student loan debt and "make a profit." Def.'s SUF ¶ 37; Resp. Def.'s SUF ¶ 37.

In February 2023, Plaintiff was promoted to Director of Technical Operations, a decision supported by senior leadership. Def.'s SUF ¶¶ 38–41; Resp. Def.'s SUF ¶¶ 38–41. Plaintiff relocated to Texas for the role and sold the Pine Grove property. Def.'s SUF ¶¶ 44–45; Resp. Def.'s SUF ¶¶ 44–45. Shortly after Mr. Dorsey resigned with knowledge of Plaintiff's promotion, an anonymous EthicsPoint complaint was submitted alleging a conflict of interest and inappropriate workplace conduct. Def.'s SUF ¶¶ 46–52; Resp. Def.'s SUF ¶¶ 46–52.

The complaint was investigated by Tammy Gromatzky, Director of Human Resources, and Ms. Ariza. Def.'s SUF ¶ 53; Resp. Def.'s SUF ¶ 53. During the investigation, Plaintiff initially denied having a romantic relationship with Mr. Dorsey but later acknowledged that he had been renting a room in her home. Def.'s SUF ¶¶ 56–58; Resp. Def.'s SUF ¶¶ 56–58. Witnesses also reported that Plaintiff referred to certain employees as "pussy ass bitches," which Plaintiff denied. Def.'s SUF ¶¶ 56–58; Resp. Def.'s SUF ¶¶ 56–58. Plaintiff produced bank records showing that Mr. Dorsey made payments to her while residing at the property. Def.'s SUF ¶ 59; Resp. Def.'s SUF ¶ 59.

The investigation did not substantiate a romantic relationship between Plaintiff and Mr. Dorsey but confirmed that a financial relationship existed between them and concluded that Plaintiff had used inappropriate workplace language. Def.'s SUF ¶¶ 61–63; Resp. Def.'s SUF ¶¶ 61–63. The findings were reported to Todd Stamm, who at the time was Group Senior Vice Presidents of Operations, and senior human resources leadership. Def.'s SUF ¶¶ 39, 64–66; Resp. Def.'s SUF ¶¶ 39, 64–66. After consultation with Greg McIlwain, Executive Vice President of Operations, and Robert Kerrigan, Group Senior Vice President of Human Resources and

4

Administration, Mr. Stamm decided to terminate Plaintiff's employment. Def.'s SUF ¶ 66; Resp. Def.'s SUF ¶ 66.

On April 19, 2023, Matt Gordon, Vice President of Pipeline Operations, and Andrea Leff, a Human Resources representative, informed Plaintiff of the termination decision in Pennsylvania. Def.'s SUF ¶¶ 70–74; Resp. Def.'s SUF ¶¶ 70–74; PSAMF ¶ 17; Resp. PSAMF ¶ 17. Mr. Gordon explained that although the investigation did not substantiate a romantic relationship, it confirmed that Plaintiff leased personal property to a subordinate without disclosure. [1] Def.'s SUF ¶¶ 70–74; Resp. Def.'s SUF ¶¶ 70–74. According to Mr. Gordon, the conduct raised concerns under the company's conflicts-of-interest policy because it created a potential or apparent conflict between Plaintiff's private interests and the company's interests and raised concerns regarding Plaintiff's candor and leadership judgment. Def.'s SUF ¶¶ 75–76; Resp. Def.'s SUF ¶¶ 75–76. Plaintiff was replaced by Brian Roche, a white male. PSAMF ¶ 5; Resp. PSAMF ¶ 5.

Plaintiff identified several other employees in connection with her allegations, including Richard Bishop and Mark Martin, both of whom had previously been the subject of EthicsPoint complaints. Def.'s SUF ¶¶ 105–17; Resp. Def.'s SUF ¶¶ 105–17. Allegations regarding Mr. Bishop were not substantiated, and reporting lines were adjusted before any relationship occurred. Def.'s SUF ¶¶ 108–10; Resp. Def.'s SUF ¶¶ 108–10. Allegations regarding Mr. Martin likewise did not substantiate a romantic relationship; however, he received a Final Warning and additional

---

[1] Mr. Gordon was not provided with any written documentation describing the complaint against Plaintiff and was not involved in the investigation beyond being interviewed by Human Resources. PSMAF ¶¶ 18-19; Resp. PSMAF ¶¶ 18-19. During or after the investigation, Mr. Gordon did not learn that anyone had referred to Plaintiff as a "little brown girl," and testified that, had he learned of such a comment, he would have immediately reported it to Human Resources. PSAMF ¶¶ 20-22, Resp. PSMAF ¶¶ 20-22.

training after failing to report a harassment concern raised by Tamson Phillips. Def.'s SUF ¶¶ 114–17; Resp. Def.'s SUF ¶¶ 114–17; PSAMF ¶ 62; Resp. PSAMF ¶ 62.

Ms. Phillips worked in Sinking Spring as an administrative assistant before transferring to the pump station in March 2022 and reported to Mr. Martin in that role. PSAMF ¶¶ 42–43; Resp. PSAMF ¶¶ 42–43. During interviews regarding a complaint about Plaintiff, she reported that Mr. Gordon made repeated inappropriate and sexually explicit comments to her, including telling her to "suck it," and on one occasion stated while they were driving to get ice cream, "I could fuck you over there." PSAMF ¶¶ 44–54, 62; Resp. PSAMF ¶¶ 44–54, 62.

On April 26, 2023, an anonymous EthicsPoint complaint was filed against Mr. Gordon alleging sexual harassment and relationships with employees. Def.'s SUF ¶¶ 120–21; Resp. Def.'s SUF ¶¶ 120–21. Although the alleged relationships were not substantiated, the investigation confirmed inappropriate workplace comments, and Mr. Stamm issued Mr. Gordon a Final Warning. Def.'s SUF ¶¶ 122–25; Resp. Def.'s SUF ¶¶ 122–25; PSAMF ¶¶ 14–15; Resp. PSAMF ¶¶ 14–15.

In a separate matter, six months after Plaintiff's termination, Sunoco received an Ethics Point Complaint regarding an inappropriate personal relationship between Donald Sebastian and Stephanie Washkow, which included that both Mr. Sebastian and Ms. Washkow were in a romantic relationship and that Ms. Washkow was living in Mr. Sebastian's home. Def.'s SUF ¶¶ 94, 96; Resp. Def.'s SUF ¶ 94, 96. Mr. Sebastian is a white male. Def.'s SUF ¶ 95; Resp. Def.'s SUF ¶ 95, 96. Ms. Ariza conducted the investigation into the EthicsPoint Complaint, which ultimately did not substantiate a romantic relationship between Mr. Sebastian and Ms. Washkow. Def.'s SUF ¶¶ 98–99; Resp. Def.'s SUF ¶¶ 98–99. However, the investigation did confirm that Ms. Washkow was living in a home owned by Mr. Sebastian. Def.'s SUF ¶ 99; Resp. Def.'s SUF ¶ 99. Due to

6

this financial relationship, Mr. Stamm decided to terminate Mr. Sebastian's employment for violating the Code of Conduct. Def.'s SUF ¶ 100; Resp. Def.'s SUF ¶ 100.

Following her termination, Plaintiff testified that she married Mr. Dorsey on October 7, 2023, although no public record of the marriage exists. Def.'s SUF ¶¶ 77–78; Resp. Def.'s SUF ¶¶ 77–78. Plaintiff and Mr. Dorsey currently reside in Kansas City, Missouri, where they signed a rental agreement and both work for CBRE Group. Def.'s SUF ¶¶ 79–80, 83–84; Resp. Def.'s SUF ¶¶ 79–80, 83–84.

On January 9, 2026, Defendant filed a motion for summary judgment on all of Plaintiff's claims. *See generally* Mem. of L. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem. L. Supp.") (ECF No. 23-1). On January 30, 2026, Plaintiff filed their opposition. *See generally* Pl.'s Br. in Opp'n to Def's Mot. for Summ. J. ("Pl.'s Br.") (ECF No. 29). Defendants filed a reply on February 19, 2026. *See generally* Def.'s Reply Br. ("Def.'s Reply.") (ECF No. 32).

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 56(c) provides that the district court must "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this

stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, No. 22-1790, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023).

To survive a properly supported motion for summary judgment, the nonmoving party must present affirmative evidence of specific facts to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57; *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advoc., Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir. 2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Colkitt*, 455 F.3d at 201; FED. R. CIV. P. 56(c)(1)(A) (requiring any party asserting a fact to "cit[e] to particular parts of materials in the record"). Statements of Disputed Facts are not evidence, so a "district court may not rely solely on" them to justify a finding that a dispute of material fact exists. *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) (citation omitted).

In applying this standard, "the court must construe the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences." *Barton & Pittinos v. Smithkline Beecham Corp.*, 118 F.3d 178, 181 n.3 (3d Cir. 1997) (citing *Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.)*, 74 F.3d 420, 433 n.10 (3d Cir. 1996). At the summary judgment stage, the Court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the

evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these are tasks left for the fact-finder." (internal quotation marks omitted)). Instead, the Court's task is to identify and explain the law governing the matter, and then, in light of that law, determine whether there remains a genuine issue of fact for trial. *Id.*

IV.     ANALYSIS

A.     **Plaintiff Cannot Estblish a Prima Facie Case of Sex or Race Discrimination[2]**

In Counts I-V of her Complaint, Plaintiff brings claims of gender discrimination and race discrimination. Specifically, Plaintiff brings her termination of employment on the basis of race under 42 U.S.C. § 1981, Title VII, and the PHRA, and her gender discrimination claims under Title VII and the PHRA. Plaintiff alleges that she can establish a prima facie case and show pretext on the part of Sunoco. Pl.'s Br. at pp. 8-11.

a.     *McDonnell Douglas* **Pretext Framework**

When analyzing a Title VII discrimination claim under the pretext theory, the Court uses the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, a plaintiff "bears the initial burden of establishing a prima facie case by a preponderance of the evidence." *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). Then, if this prima facie case has been established, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant can

---

[2] According to Defendant, Plaintiff testified at her deposition that the basis for her race and sex discrimination claims is the same. Def.'s SUF ¶¶ 102–05. Both Defendant and Plaintiff have treated these claims together in their arguments. Accordingly, the Court considers them together in a single analysis.

show this, the burden of persuasion switches again, as "the presumption of discriminatory action raised by the prima facie case is rebutted." *Id.* The plaintiff then, again, "must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Id.*

Again, this framework begins with the plaintiff's requirement to show the elements of a prima facie case of discrimination: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position he or she sought to attain or retain; (3) the plaintiff suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). Defendant argues that Plaintiff has failed to establish the fourth element and therefore cannot make out a prima facie case.

### i. Inference of Discriminatory Motive

Defendant argues that Plaintiff has failed to show any circumstances that would give rise to an inference of discriminatory motive. Def.'s Mem. L. Supp at pp. 4-6. This inference "could be supported in a number of ways, including, but not limited to, (1) comparator evidence, (2) evidence of similar racial discrimination of other employees, or (3) direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus." *Jarmon v. Trader Joe's Co.*, 660 F. Supp. 3d 357, 363 (E.D. Pa. 2023) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)).

Plaintiff argues she meets this element because she can show comparator evidence that provides an inference of discrimination. Specifically, she argues that Mr. Gordon—a white man—

was treated more favorably than her—a Hispanic woman—even though they were accused of similar misconduct and were subject to the same employment policies. Pl.'s Br. at pp. 10-11.

"A similarly situated employee does not need to be identically situated, but the comparator must be similar to plaintiff in 'all relevant respects.'" *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 525 (E.D. Pa. 2014). Factors relevant to the analysis are whether the employees dealt with the same supervisor, were subject to the same standards, shared job responsibilities, and the nature of the misconduct. *Id.* at 526; *see also Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) ("Which factors are relevant is determined by the context of each case, but often includes a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.") This is typically a question of fact for the jury, and "summary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated." *Abdul-Latif*, 990 F. Supp. 2d at 525. (emphasis added).

"[W]hile 'similarly situated' does not mean identically situated, purported comparators must have committed offenses of 'comparable seriousness.'" *Opsatnik*, 335 F. App'x at 223 (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)). Here, the Court concludes that Mr. Gordon is not the appropriate comparator and instead finds that Mr. Sebastian is. Plaintiff, however, urges the Court to conclude that Mr. Gordon's conduct—being accused of sexual harassment—is more egregious than the conduct attributed to Plaintiff and Mr. Sebastian and therefore renders him the proper comparator. Pl.'s Br. at pp. 10–11. Specifically, Plaintiff alleges that Mr. Gordon, a white male vice president accused of violating the company's sexual harassment policy, had substantiated complaints against him involving conduct that occurred only

a year before the investigation, yet he received only a final warning. *Id.* In contrast, Plaintiff, a Hispanic woman, was terminated for an alleged violation of the Conflict of Interest Policy that did not expose the company to potential legal liability, even though both individuals were disciplined by the same decisionmaker. *Id.*

The Court is not persuaded by Plaintiff's argument that Mr. Gordon is an appropriate comparator. Although Plaintiff characterizes Mr. Gordon's alleged misconduct as more egregious, the relevant inquiry is not simply the perceived seriousness of the conduct, but whether the employee committed offenses of comparable seriousness. *See Opsatnik*, 335 F. App'x at 223. Mr. Gordon was investigated for alleged violations of the company's sexual harassment policy, whereas Plaintiff was investigated for a conflict-of-interest violation involving a financial relationship with a subordinate. These allegations implicated different policies, different factual circumstances, and different types of workplace concerns. Courts in the Third Circuit have found that employees are not similarly situated where the employees engaged in different types of misconduct. *See Moussa v. Penn. Dep't of Public Welfare*, 413 F. App'x 484, 486–87 (3d Cir.2011) (concluding that employees who engaged in different types of workplace misconduct were not "similarly situated").

Mr. Sebastian, by contrast, presents a far more appropriate comparator. Like Plaintiff, Mr. Sebastian was investigated for having an improper relationship with a subordinate that created a conflict of interest under the company's Code of Conduct. Def.'s SUF ¶¶ 94–101; Resp. Def.'s SUF ¶¶ 94–101. The investigation was conducted by the same investigator, Ms. Ariza, and the disciplinary decision was made by the same decisionmaker, Mr. Stamm. Def.'s SUF ¶¶ 98–100; Resp. Def.'s SUF ¶¶ 98–100. Moreover, the investigation occurred only months after Plaintiff's termination and involved nearly identical factual circumstances, a subordinate residing in the

supervisor's home. Def.'s SUF ¶ 99; Resp. Def.'s SUF ¶ 99. Following that investigation, Mr. Sebastian, a white male, was also terminated. Def.'s SUF ¶¶ 95, 99–100; Resp. Def.'s SUF ¶¶ 95, 99–100. Because Mr. Sebastian, engaged in similar conduct, was subject to the same policies, and was disciplined by the same decisionmaker, he is the most relevant comparator in the record.

Additionally, Plaintiff argues that she satisfies this element because she was replaced by Brian Roche, a white man, which she contends supports an inference of discrimination. Pl.'s Br. at p. 10. Indeed, the fact that a plaintiff is replaced by someone outside their protected class can support an inference of discrimination for a prima facie case. *See Lazard v. All Restore*, LLC, No. CV 19-6040, 2021 WL 1175137, at *7 (E.D. Pa. Mar. 29, 2021) (citing *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007)). However, the *McDonnell Douglas* framework "was never intended to be rigid" and instead provides "a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *See Tanai v. Saber Healthcare Grp.*, No. CV 23-3133, 2025 WL 3080713, at *4 (E.D. Pa. Nov. 4, 2025) (citing *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978)). Accordingly, and contrary to Plaintiff's contention, the mere fact that Plaintiff was replaced by a white male does not, on its own, establish an inference of discrimination. *Tanai*, 2025 WL 3080713, at *4.

Considering the record as a whole and even drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has not produced sufficient evidence to permit a reasonable jury to find circumstances giving rise to an inference of discrimination. Plaintiff's reliance on Mr. Gordon is unavailing because he is not similarly situated in all relevant respects, and the most comparable employee identified in the record—Mr. Sebastian—was treated the same as Plaintiff. Additionally, although Plaintiff was replaced by a white male, that fact alone, does not

13

create a reasonable inference of race or gender discrimination. Accordingly, Plaintiff has failed to establish the fourth element of a prima facie case.

### ii. Legitimate, Nondiscriminatory Reason

If Plaintiff could establish a prima facie case, the burden would then shift to Defendant to put forth a legitimate, non-discriminatory reason for the adverse employment action. The employer has a "'relatively light' burden of production" to "introduc[e] evidence which, taken as true, would permit a conclusion that there was a nondiscriminatory reason for its employment decision." *Terrell v. Main Line Health, Inc.,* 320 F. Supp. 3d 644, 657 (E.D. Pa. 2018) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). "The employer need not prove that the proffered reason actually motivated the termination decision, because 'throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.* The record supports Defendant's contention that it terminated Plaintiff for a legitimate, non-discriminatory reason: engaging in an improper financial relationship with a subordinate and failing to report it under Sunoco's Code of Conduct, which was confirmed by an independent investigation. Def.'s SUF ¶¶ 62, 72–75; Resp. Def.'s SUF ¶¶ 62, 72–75.

Defendant has put forth sufficient evidence of providing a legitimate, non-discriminatory reason for his termination. *See e.g., Capps v. Mondelez Glob.,* LLC, 847 F.3d 144, 152 (3d Cir. 2017) (finding that violation of company policy constitutes a "legitimate, nondiscriminatory justification" for discharging an employee); *DeCicco v. Mid-Atlantic Healthcare*, LLC, 275 F. Supp. 3d 546, 555-56 (E.D. Pa. 2017) (noting that violation of internal company policies may constitute legitimate, nondiscriminatory reason for termination); *Garrow v. Wells Fargo Bank, N.A.*, No. 15-1468, 2016 WL 5870858, at *6 (E.D. Pa. Oct. 7, 2016) ("Violating [employer company] policy is undoubtedly a legitimate and nondiscriminatory reason for termination.").

### iii.  Pretext

With Defendant having put forth evidence, which taken as true, would allow a reasonable factfinder that there was a legitimate, nondiscriminatory reason for the adverse employment action, the burden, again shifts to Plaintiff, "to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Terrell*, 320 F. Supp. 3d at 658. "To meet this burden, a plaintiff must identify evidence from which a reasonable jury could either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (citing *Fuentes*, 32 F.3d at 764).

Under the first *Fuentes* prong, a plaintiff must present evidence that would allow a jury to disbelieve the employer's explanation by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason such that a reasonable factfinder could find it unworthy of credence. *Terrell*, 320 F. Supp. 3d at 658. A plaintiff may not establish pretext simply by showing that the employer's decision was wrong or mistaken, because the central inquiry is whether the employer acted with discriminatory intent. *Robinson v. Matthews Int'l Corp.*, 368 F. App'x 301, 304 (3d Cir. 2010).

Plaintiff identifies several pieces of evidence that she contends demonstrate that Sunoco's stated reasons for her termination were pretextual.

First, Plaintiff argues that Mr. Gordon is a similarly situated comparator because both he and Plaintiff were disciplined by Stamm, yet Mr. Gordon—a white man who was found to have engaged in sexual harassment—received only a final warning while Plaintiff was terminated. Pl.'s Br. at p. 16. Plaintiff further contends that a jury could reasonably conclude that sexual harassment is a more serious violation than a Code of Conduct breach involving a financial relationship with

a subordinate, particularly because sexual harassment exposes the company to potential liability under Title VII. Pl.'s Br. at p. 16. However, it is not the Court's role to second-guess an employer's business judgments. *See Klimek v. United Steelworkers Local 397*, 618 F. App'x 77, 80 (3d Cir. 2015). The Third Circuit has explained that courts are not a "super-personnel department" tasked with correcting allegedly harsh employment decisions; rather, the inquiry is whether the employer's stated reasons are pretextual. *Id.* A plaintiff's belief that she received a harsher punishment, standing alone, is insufficient to establish pretext. *Id.*

Second, Plaintiff argues that Sunoco's handling of the investigation into Mr. Gordon's conduct raises questions about the seriousness and fairness of the process, asserting that Mr. Gordon was disciplined without knowing the specific allegations against him. Pl.'s Br. at p. 17. The record does not support this characterization. Mr. Gordon's deposition testimony reflects that he was aware of the allegations during the investigation. *See* SA332–SA333 (ECF No. 29-2). In his testimony, he referenced several incidents that Ms. Leff asked him about, including the so-called "cheese ball incident" and an encounter with Ms. Phillips during a visit to Dairy Queen. *See id.*

Third, Plaintiff contends that during the investigation into her conduct, Human Resources learned that someone had referred to her as a "little brown girl," yet failed to investigate this apparent instance of racial harassment. Plaintiff argues that a jury could interpret this as evidence that the company minimized or ignored discrimination concerns. Pl.'s Br. at p. 17. The record, however, undermines Plaintiff's characterization. When Ms. Gromatzky asked Plaintiff directly whether anyone had referred to her as a "little brown girl," Plaintiff denied that anyone had done so and further stated that she had not asked anyone to call her that. *See* A142–A143 (ECF No. 23-3). In light of Plaintiff's denial that the incident occurred, the record does not support Plaintiff's

contention that Human Resources disregarded an allegation of racial harassment or otherwise failed to investigate discrimination concerns.

Fourth, Plaintiff points to another employee, Tamson Phillips, a white woman, who filed a retaliation charge alleging that she had experienced sexual harassment by Mr. Gordon and argues that the company failed to investigate that complaint, thereby supporting an inference that the company did not meaningfully investigate complaints by women. Pl.'s Br. at p. 17. The record, however, does not support that characterization. Rather, the record reflects that the allegation was investigated. *See* A279–A292 (ECF No. 23-3); *see also* SA312–313 (ECF No. 29-2).

Accordingly, Plaintiff has not produced evidence that would allow a reasonable jury to disbelieve Sunoco's proffered explanation for the termination decision. As such, Plaintiff has failed to satisfy the first prong of the *Fuentes* test. The Court therefore turns the second prong of the *Fuentes* test, whether Plaintiff has produced evidence that discrimination was more likely than not a motivating factor in the challenged employment action.

For the second *Fuentes* prong, Plaintiff contends that Sunoco's reliance on the termination of Mr. Sebastian, a white male, does not negate the possibility of discrimination. Pl.'s Br. at p. 18. She argues that a jury could reasonably find that Mr. Sebastian's firing occurred only after she filed her discrimination charge and thus does not establish a consistent practice of enforcing the conflict-of-interest policy. *Id.* Plaintiff emphasizes that disciplining an employee outside her protected class is merely evidence for a jury to consider, not a legal bar to her claim, particularly when such treatment occurs after her termination. *Id.* She further asserts that Sunoco's reliance on *Curran* is misplaced because, unlike that case, here there is a plausible argument that Morgan was treated less favorably than similarly situated employees, and the complete workplace context must be considered, not selective comparators. *Id.* at p. 19. Finally, Plaintiff challenges the "same actor"

inference as an improper judicial shortcut that imposes a higher burden on civil rights plaintiffs than Title VII allows. *Id.*

The Court is not persuaded. At summary judgment, Plaintiff must produce concrete evidence that Sunoco fired Mr. Sebastian to conceal discriminatory intent or retaliate against her. Mere speculation and conclusory allegations cannot carry this burden. See *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003) (finding that unsupported assertions, speculation, or conclusory allegations cannot defeat summary judgment). The record contains no evidence linking Mr. Sebastian's termination to Plaintiff's discrimination claim or suggesting it was intended to justify her firing. Without such evidence, no reasonable jury could conclude that discrimination was a motivating factor. Plaintiff therefore fails the second prong of the *Fuentes* test.

Plaintiff bore the burden of establishing pretext. Because Defendant pointed to a legitimate, nondiscriminatory reason for terminating Plaintiff's employment (*i.e.*, having a financial relationship with one of her subordinates and failing to report it under Sunoco's Code of Conduct) and Plaintiff failed to establish pretext, summary judgment is **GRANTED** for Defendant on Plaintiff's termination of employment contract on the basis of race claims, under 42 U.S.C. § 1981, Title VII, and in violation of the PHRA, and termination of employment on the basis of gender claim, under Title VII, and in violation of the PHRA.

## V.    CONCLUSION

The Court concludes that no reasonable factfinder could determine in favor of the Plaintiff regarding her termination based on race or gender. Therefore, the Court **GRANTS** the Defendant's

motion for summary judgment on Plaintiff's claims of termination due to race and gender. An appropriate Order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge